1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MICHAEL AARON JAYNE,

11               Plaintiff,                    No. CIV S-07-2522 LKK GGH P

12         vs.

13    SPRINT PCS, et al.,                      ORDER &

14               Defendants.                   FINDINGS AND RECOMMENDATIONS

15    _____/

16    Introduction

17               Plaintiff, a state prisoner proceeding pro se,[1] seeks relief pursuant to 42 U.S.C. §

18    1983.  Pending before the court are: 1) defendant Sprint PCS' motion to dismiss, filed on

19    6/23/08; 2) defendants Harrison, Heise and Abney's motion to dismiss, filed on 7/23/08, to

20    which plaintiff filed his opposition on 7/30/08, after which these defendants filed their reply on

21    8/06/08; 3) plaintiff's motion for default judgment, filed on 7/10/08, to which defendant Sprint

22    PCS, filed an opposition on 8/01/08; 4) plaintiff's motion to consolidate cases, filed on 9/02/08,

23    to which defendants Anderson Police Department, Blunk and Collier, filed their opposition on

24    9/17/08, and to which defendant Sprint PCS filed its opposition, on 9/24/08.

25    _____

26         [1] At the time of filing his complaint, on 11/26/07, plaintiff was an inmate at Shasta
      County Jail.

                                                  1

Plaintiff's Allegations

This action proceeds on plaintiff's original complaint, filed on 11/26/07.  Initially, the matter proceeded against the following defendants: Sprint PCS; Redding Police Officer Solada; Anderson Police Officer Steve Blunk; Anderson Police Detective Collier, Anderson Police Dispatch; California Department of Corrections and Rehabilitation (CDCR) Parole Supervisor Rick Burrows; CDCR Parole Supervisor John Heise; CDCR Parole Agent Randy Abney; CDCR Parole SSU Agent Harrison; Parole Agent Larry Welch.  However, plaintiff has subsequently sought voluntarily dismissal of, or stipulated to, the dismissal of defendants Burrows and Welch (see docket  # 18 & # 20), as well as defendants Solada, Heise, and Harrison (see docket # 72, # 74 & # 77), and these defendants have been dismissed.  The remaining defendants, therefore, are: Sprint PCS; Officer Steve Blunk; Detective Collier, Anderson Police Dispatch; CDCR Parole Agent Randy Abney.  The summary of plaintiff's allegations will only peripherally reference any since dismissed parties.

Plaintiff alleges that, upon paroling from SATF (California Substance Abuse Treatment Facility) to the Redding Parole Office, on 10/11/06, he complained of having been subjected to retaliation by (now dismissed) defendant Welch, his previous parole agent.  Plaintiff alleges that Welch's fabrications led to a one-year parole revocation for plaintiff, even though he was found "factually innocent" in October, 2005 criminal proceedings, and was subjected to "illegal confinement," from October 2005, until October, 2006.  When plaintiff's complaints against Welch led to an Internal Affairs investigation, a parole supervisor (unnamed) recommended plaintiff's parole be transferred to Redding Region 2.  Plaintiff made contact with CDCR Parole Supervisors Burrows and Heise (no longer defendants) in Sacramento to complain of harassment by defendant Abney, Welch's partner.  Complaint, pp. 3-5.

Plaintiff was eventually transferred to the Red Bluff parole office due to his fear of defendant Abney and (now-dismissed defendant) Welch.  In February of 2007, plaintiff told defendant Abney that someone had told him that Abney was a child molester, which enraged

2

Abney, who told plaintiff he was in for "a rude awakening."  On March 3, 2007, defendant

Abney and Harrison (now dismissed as a defendant), ordered a Redding police officer to book

plaintiff into Shasta County Jail, saying that plaintiff was "unauthorized to be in Shasta County."

Complaint, p. 5.

Plaintiff told Officer Solada (now dismissed as a defendant) that he was

authorized to be in Shasta County for his work and college and also said that defendant Abney

was not authorized to be in contact with plaintiff because of his past threats and the Internal

Affairs investigation and, moreover, that Abney had never been his parole agent.  Plaintiff was

taken down at gunpoint in the Burger King parking lot in Redding at 4:00 p.m. on 3/03/07, by

Solada, but as plaintiff has dismissed Solada from his suit, the court will not address plaintiff's

claims that Solada used excessive force.  Plaintiff claims to have insisted that Solada contact his

Red Bluff parole agent, Ben Ananauvo.  Plaintiff complains that his truck was impounded and

that he spent three days in "illegal confinement," losing wages ($1500) and the cost of impound

fees ($500).  When plaintiff contacted Heise (no longer a defendant), he was told that what had

happened would not happen again; plaintiff demanded to be reimbursed for his losses.  Non-

defendant PA III Sullivan "refused to lodge a 602 complaint."  Complaint, p. 6.

About two weeks later, a Miss Shanda (or Shonda) Kessler (not a defendant) went

to the Anderson police to file a restraining order against plaintiff, then maliciously contacted

defendant Abney, bypassing plaintiff's assigned parole agent, so that Abney would go after

plaintiff.  Defendants Blunk, Collier and the defendant identified only as [Anderson police]

Dispatch, coerced Kessler into saying plaintiff had held her against her will for six hours.  These

defendant officers than sent an exigent circumstances request/demand to plaintiff's cell phone

provider, saying that plaintiff was wanted for kidnapping and that the cell phone service was to

provide plaintiff's cell phone records and GPS location.  Plaintiff asserts that this

request/demand was made "without a warrant or real cause," and claims that defendant Sprint

PCS provided the cell phone records to the Anderson police "based on this false and illegal

3

1    pretense." Complaint, p. 7.

2            Defendant Abney served an illegal search warrant at the house of his best friend,

3    Raymond Sargent. Abney also threw plaintiff's brother-in-law down at gunpoint telling him:

4    "Michael Jayne[2] is going to die." Complaint, p. 7.

5            Plaintiff sent a complaint to the Redding police chief, the Anderson police, and

6    filed a complaint against defendant Abney with the California Office of Internal Affairs. He

7    asserts that [administrative] remedies as to defendant Sprint are not available. Plaintiff

8    complains that defendant Abney has fabricated a parole report saying that plaintiff threatened

9    someone named Kittrell Wyrick, as well as Shanda Kessler. Calling Abney a "rogue agent,"

10   plaintiff says this defendant also lied about the facts of Kessler's statements in his report

11   concerning plaintiff's having allegedly impersonated an officer, having threatened Wyrick's

12   sister, and saying that plaintiff "would die from suicide by cop." Complaint, pp. 7-8. Plaintiff

13   seeks money damages and injunctive relief.

14   Plaintiff's Motions

15                        *Motion for Judgment of Default*

16           Plaintiff's motion for a default judgment, directed at defendant Sprint PCS, lacks

17   foundation and is misconceived. Plaintiff contends that defendant Sprint failed to answer the

18   complaint timely. See motion, filed on 7/10/08 (docket # 34). The order, directing service of the

19   complaint upon, inter alia, defendant Sprint PCS, was filed on 4/15/08 (# 14); thereafter, a

20   waiver of service of summons, signed by counsel for defendant Sprint and dated 5/20/08, was

21   filed in this court on 6/03/08 (# 25). Contained within the signed waiver is the admonition that

22   "an answer or motion under Rule 12" must be filed in this court and served upon plaintiff "within

23   60 days after 4/24/2008...." Docket # 25, p. 3. Defendant Sprint's motion to dismiss, pursuant to

24   Fed. R. Civ. P. 12(b)(6), was filed on 6/23/08 (# 29), precisely 60 days after 4/24/08. Defendant

25   _____

26           [2] Plaintiff herein.

                                         4

1    Sprint's motion was a timely response and plaintiff's motion for a judgment of default by this

2    defendant will be denied.

3                    *Motion to Consolidate Cases*

4            Plaintiff asks that this case be consolidated with two other cases he claims to be

5    active and in which he is a plaintiff, CIV-S-06-0097 JKS DAD P, and CIV-S-08-0764 GEB EFB

6    P, into a single case and that any such consolidated case or cases then be assigned to District

7    Judge William B. Shubb and Magistrate Judge John F. Moulds.  See motion, filed on 9/02/08

8    (docket # 60).  The motion was opposed by defendant Sprint, on 9/24/08 (# 75), as well as by

9    defendant Solada, by a filing on 9/16/08 (# 68), although defendant Solada has since been

10   dismissed.  Plaintiff claims that the same defendants are at issue in all three cases and asks that

11   the cases be screened as one case and all defendants be served.

12           Under Fed. R. CIV. P. 42(a), cases involving "a common question of law or fact"

13   may be consolidated, as former defendant Solada noted.  However, such consolidation is not

14   warranted herein.

15           In the first place, this motion remains to be addressed in CIV-S-06-0097 JKS

16   DAD P, which is the more appropriate forum because that is the earliest initiated action of the

17   three.  Second, court records of the two other cases of which this case takes judicial notice,[3]

18   demonstrate that plaintiff is not proceeding against only the same defendants in each.  Third,

19   each case is already proceeding on a separate track; in fact, it appears that plaintiff subsequently

20   voluntarily dismissed Case No. CIV-S-08-0764 GEB EFB P, by a filing dated 9/10/08 (docket #

21   16), which would obviously mean it is not an active case (although he appears to have later

22   sought to vacate that request, on 9/23/08 (docket # 18)).

23   \\\\\

24

25           [3] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80
     F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126
26   (1981).

                                                5

1    Fourth, plaintiff contends that he seeks the assignment of specific judges (neither

2    of whom are the judges currently assigned to any of the cases at issue) because these judges are

3    familiar with the facts surrounding his claims involving the Shasta County Sheriff's Department.

4    Plaintiff is apparently referencing one of his closed cases, CIV-S-02-0418 WBS JFM P (a case to

5    which yet another closed case was related, CIV-S-03-2034 WBS JFM P).   Court records in Case

6    No. CIV-S-03-2034 WBS JFM P indicate that Judge Moulds dismissed that case in an order,

7    filed on 4/29/04 (# 12), pursuant to plaintiff's request.   In CIV-S-02-0418 WBS JFM, Judge

8    Moulds issued an order, filed on 11/18/08 (# 137), noting that that case had been closed since

9    3/08/05, and denying, inter alia, plaintiff's motion for a consolidation of the three cases at issue

10   in this motion, filed therein on 9/02/08 (as was the motion herein), and advising plaintiff that no

11   further orders would issue in that case.   Thus, it appears inappropriate for plaintiff to be seeking

12   to have three different, subsequently filed cases proceed under judges who were assigned to cases

13   that have been previously closed or dismissed.   Such an effort to proceed with judges of his

14   personal selection may constitute a rather unabashed and express form of judge-shopping, which

15   is "conduct which abuses the judicial process."   Hernandez v. City of El Monte, 138 F.3d 393,

16   399 (9th Cir. 1998).   Finally, it appears that plaintiff's motion has been expressly denied by Judge

17   Moulds.   For all these reasons, this inapposite motion will be disregarded and vacated from this

18   court's calendar.

19   Motions to Dismiss - Defendant Sprint PCS

20   The motion to dismiss, filed by defendant Sprint PCS (Sprint), was brought

21   pursuant to Fed. R. Civ. P. 12(b)(6).

22   *Legal Standard for Motion to Dismiss*

23   In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

24   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

25   it must contain factual allegations sufficient to "raise a right to relief above the speculative

26   level."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).   "The

6

1   pleading must contain something more...than...a statement of facts that merely creates a suspicion

2   [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

3   and Procedure § 1216, pp. 235-236 (3d ed. 2004).

4           In considering a motion to dismiss, the court must accept as true the allegations of

5   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

6   Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

7   motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

8   89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

9   that general allegations embrace those specific facts that are necessary to support the claim.'"

10  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

11  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

12  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

13  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

14          The court may consider facts established by exhibits attached to the complaint.

15  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

16  consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

17  1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

18  papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

19  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

20  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

21          A pro se litigant is entitled to notice of the deficiencies in the complaint and an

22  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

23  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

24          *Discussion*

25          Defendant Sprint identifies itself as a wireless communications company having

26  customers in every state, including California, and acknowledges that plaintiff was one such

7

1  customer.  MTD, p. 2.  Further, defendant Sprint accepts as true plaintiff's allegation that Sprint

2  provided plaintiff's cell phone records to defendants upon a demand/request by defendants

3  Blunk, Collier and Anderson Police Dispatch predicated on exigent circumstances.[4]  Id.  Nor

4  does defendant Sprint, which disclaims any knowledge of plaintiff's interaction with law

5  enforcement, in any manner contest plaintiff's version of the facts with regard to the legitimacy

6  of the basis for the defendants' request.   Id.

7          What this defendant does assert, however, is that plaintiff "has alleged precisely

8  the facts that establish by law that Sprint has no liability for the disclosure of his phone records in

9  response to an emergency request from law enforcement...."  MTD, p. 3.  Sprint contends that

10  under the Stored Communications Act at 18 U.S.C. § 2702(c)(4), service providers are permitted

11  to disclose telephone records so long as they have a good faith belief that there is an emergency

12  requiring authorization.  MTD, p. 1, 3-5.  Moreover, according to Sprint, the SCA affords

13  complete immunity from suit against a carrier which discloses such information pursuant to

14  statutory authority, citing 18 USC § 2703(e).  Id., at 1, 4.  Defendant Sprint seeks dismissal from

15  this action with prejudice.

16          Defendant Sprint argues that the SCA, pursuant to 18 U.S.C. § 2702(c)(4), allows

17  service providers to disclose telephone records if the provider has a good faith belief that an

18  emergency exists requiring disclosure.  Memorandum in support of Sprint Motion to Dismiss

19  (hereafter, MTD), p. 1.  Moreover, according to Sprint, the SCA, under 18 U.S.C. § 2703(e)

20  affords it complete immunity to suit, stating that no cause of action may lie against a carrier

21  which discloses such information under a statutory authorization.  Id.

22          Plaintiff claims in his opposition, sent from Shasta County Jail, that he never

23  received the motion to dismiss.  Opposition (Opp.).  In reply, defendant contends that plaintiff's

24  _____

25          [4] In fact, defendant Sprint expressly affirms that it provided "the records requested in reliance on the certification from Anderson Police that the records were necessary because of an exigent situation involving danger of death or serious physical injury to any person."  MTD, p.2,

26  footnote 1.

1  opposition is both untimely and fails to address the merits of defendant's argument.  Defendant

2  Sprint also avers that plaintiff was served with its motion at both his Shasta County Jail address

3  and at Highland State Desert Prison [sic],[5] confirming that the motion as originally addressed to

4  the prison was returned on 6/30/08 to Sprint because plaintiff's prison identification number had

5  not been included, but that an amended proof of service was filed, and the motion was re-served

6  at "Highland State Desert Prison," this time including plaintiff's inmate number.  Reply, p. 2;

7  Declaration of Troy P. Sauro.  The court's docket confirms this representation, even though the

8  amended proof of service does continue to slightly confuse the prison name it also appears to

9  contain the prisoner identification number that was correct at that time.  See docket # 33.

10  Defendant Sprint further observes that plaintiff sent Sprint a letter, received on 7/24/08, and

11  dated 7/17/08, which, defendant contends, undermines any representation that plaintiff has not

12  been served with the motion.  See Exhibit A to Sauro Declaration in support of Reply.  The court

13  finds plaintiff's letter to be a bit ambiguous, such that it is not entirely clear whether plaintiff

14  ever received a copy of the motion, although defendant Sprint does appear to have properly

15  served him by amended service.

16         To his opposition, plaintiff attaches as Exhibit A, an unauthenticated copy of a

17  document entitled "Mandatory Information for Exigent Circumstance Requests," which appears

18  to be a Sprint PCS form, which indicates that the Anderson Police Department sought plaintiff's

19  phone records from Sprint and set forth the alleged exigent circumstances therein.  In reply,

20  Sprint does not challenge the accuracy or authenticity of the form.  Because plaintiff has alleged

21  within his complaint that Sprint received a request for plaintiff's records due to alleged exigent

22  circumstances from Anderson police, to which it responded and produced plaintiff's cell phone

23  records, an allegation defendant Sprint does not dispute, this court can consider this extrinsic

24  evidence without the 12(b)(6) motion being converted into a motion for summary judgment

25  _____

26         [5]R The facility is named High Desert State Prison.

9

1   because it meets an exception :

2           [A] court may consider "material which is properly submitted as
            part of the complaint" on a motion to dismiss without converting
3           the motion to dismiss into a motion for summary judgment... If the
            documents are not physically attached to the complaint, they may
4           be considered if the documents' "authenticity ... is not contested"
            and "the plaintiff's complaint necessarily relies" on them.

5

6   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

7           Under 18 U.S.C. § 2702(c) (4), a provider of an electronic communication service

8   "may divulge a record or other information pertaining to a subscriber to or customer of such

9   service (not including the contents of communications covered by subsection (a)(1) or (a)(2))--":

10          to a governmental entity, if the provider, in good faith, believes
            that an emergency involving danger of death or serious physical
11          injury to any person requires disclosure without delay of
            information relating to the emergency;

12

13  Defendant Sprint, a cell phone provider, identifies itself as a provider of an electronic

14  communication service (MTD, p. 4), citing In re Applications of U.S. for Orders Pursuant to

15  Title 18, U.S. Code Section 2703(d), 509 F.Supp.2d 76, 79 (D. Mass. 2007) (cell phone service

16  providers "undisputedly" fit within the definition of an "electronic communication service" in 18

17  USC § 2510(15)); see also, In re Application of the U.S. for an Order for Prospective Cell Site

18  Location Information on a Certain Cellular Telephone, 460 F.Supp.2d 448, 459 (S.D.N.Y. 2006).

19          Congress passed the Stored Communications Act in 1986 as part of
            the Electronic Communications Privacy Act.  The SCA was
20          enacted because the advent of the Internet presented a host of
            potential privacy breaches that the Fourth Amendment does not
21          address.  See Orin S. Kerr, A User's Guide to the Stored
            Communications Act, and a Legislator's Guide to Amending It, 72
22          Geo. Wash. L. Rev.. 1208, 1209-13 (2004). Generally, the SCA
            prevents "providers" of communication services from divulging
23          private communications to certain entities and/or individuals.  Id.
            at 1213.

24

25  Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 900 (9th Cir. 2008).

26  \\\\\

10

1
2
3
4

Title II of the ECPA[6] created a new chapter of the criminal code dealing with access to stored communications and transaction records, which is known as the "Stored Communications Act," codified at 18 U.S.C. § 2701 et seq. The SCA authorizes the government to require disclosure of stored communications and transaction records by third party service providers.

5   In re Application of the U.S. for an Order Authorizing Installation and Use of a Pen Register and

6   a Caller Identification System on Telephone Numbers (Sealed), 402 F. Supp.2d 597, 600 (D. Md.

7   2005).

8
9
10
11

The Stored Communications Act prohibits unauthorized access to certain electronic communications, see 18 U.S.C. § 2701, and places restrictions on a service provider's disclosure of certain communications, see id. § 2702.  It also permits a "governmental entity" to compel a service provider to disclose the contents of communications in certain circumstances. See id. § 2703.

12   Warshak v. United States, 532 F.3d 521, 523 (6th Cir. 2008) ("The SCA authorizes the

13   government to require disclosure of stored communications and transaction records by third party

14   service providers.")

15          Under 18 USC § 2703(e):

16
17
18
19

**No cause of action against a provider disclosing information under this chapter.**--No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter.

20          It has been found that "a  provider who discloses records or other information

21   pursuant to the authorization contained in 18 U.S.C. § 2702(c)(4) in emergency circumstances

22   has the same protection from lawsuits as a provider who discloses the records pursuant to a court

23   order."   In re Application of U.S. for a Nunc Pro Tunc Order for Disclosure of

24   Telecommunications Records, 352 F.Supp.2d 45, 47 (D. Mass. 2005) (emphasis added):

25   _____

26          [6] The Electronic Communications Privacy Act.

11

1    From the papers submitted by the United States Attorney, it is clear that the
     disclosure without a court order by the provider in the instant case was due to the
2    fact that the government was investigating a kidnaping which included a demand
     for ransom.  This is precisely the type of emergency situation which "involv[es]
3    immediate danger of death or serious physical injury to [a] person...".  A year after
     the passage of the Patriot Act, Congress, in the Homeland Security Act of 2002,
4    Pub L. 107-296, § 225(h)(1) amended 18 U.S.C. § 2703(e) to provide that:

5              No cause of action shall lie in any court against any provider of
               wire or electronic communication service, its officers, employees,
6              agents, or other specified persons for providing information,
               facilities, or assistance in accordance with the terms of a court
7              order, warrant, subpoena, *statutory authorization*...

8    Thus, a provider who discloses records or other information pursuant to the
     authorization contained in 18 U.S.C. § 2702(c)(4) in emergency circumstances has
9    the same protection from lawsuits as a provider who discloses the records
     pursuant to a court order.
10

11          Moreover, a district court has declined "to speculate whether it would ever be

12   appropriate, under exigent circumstances when it would not be feasible to get a signed warrant or

13   comply with other legal process, for the government to notify the ISP of an emergency and

14   receive subscriber information without conforming with the ECPA," Freedman v. America

15   Online, Inc., 303 F. Supp.2d 121, 128 (D. Conn. 2004).

16          In his opposition, plaintiff contends that the "Anderson police defendants acted in

17   a conspiracy to illegally obtain evidence by mis[s]tating the facts on a Sprint PCS form claiming

18   plaintiff was wanted for kidnapping."  Opp., p. 2.  Plaintiff further challenges the legality of the

19   form such that it could have been sufficient to permit Sprint to divulge his personal information,

20   including call logs, GPS locations, social security number (which he appears to the alleging is a

21   violation of the "HIPPA Act") "without legal oversight or a warrant."  Defendant Sprint is

22   correct that plaintiff's allegations regarding any claimed conspiracy by law enforcement

23   defendants is irrelevant to plaintiff's claim against Sprint.  See Reply.  To the extent that

24   defendant Sprint's actions came within the provision of § 18 U.S.C. § 2702(c)(4), on the face of

25   it, under § 2703(e), Sprint should be dismissed with prejudice as a defendant.  If plaintiff in fact

26   did fail to receive the motion to dismiss, he has ample opportunity to provide a substantive

1    opposition in the form of objections.  In an excess of caution, the court will direct the Clerk of

2    the Court to provide plaintiff with a copy of the motion.

3    Motion to Dismiss - Defendants Harrison, Heise and Abney

4           The court has previously noted plaintiff's voluntary dismissals of various

5    defendants above.  Subsequent to the submission of this motion to dismiss, plaintiff moved for

6    voluntary dismissal of, inter alia, defendants Harrison and Heise, on 9/17/08, after which, on

7    9/23/08 (docket # 74), this court directed the Clerk of the Court to note in the case docket

8    plaintiff's voluntary dismissal of these defendants, pursuant to Fed. R. Civ. P. 41(a)(1).

9    Therefore, this motion now has relevance only to the extent that the dismissal of defendant

10   Abney is sought.  This motion is brought under non-enumerated Fed. R. Civ. 12(b), on the

11   ground that plaintiff failed to exhaust administrative remedies.

12          *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

13          In a motion to dismiss for failure to exhaust administrative remedies under non-

14   enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

15   raising and proving exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

16   parties may go outside the pleadings, submitting affidavits or declarations under penalty of

17   perjury, but plaintiff must be provided with notice of his opportunity to develop a record.  Wyatt

18   v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by its order

19   filed on 4/15/08 (docket # 14).

20          Should defendants submit declarations and/or other documentation demonstrating

21   an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

22   Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

23   complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

24   the court's attention those parts of the complaint upon which plaintiff relies.  If the court

25   determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

26   remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

1           *PLRA Requirements*

2           The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

3   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

4   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

5   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

6   must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

7   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

8   inmates must exhaust administrative remedies, regardless of the relief offered through

9   administrative procedures.  Therefore, inmates seeking money damages must also completely

10  exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

11  seeking money damages are required to exhaust administrative remedies even where the

12  grievance process does not permit awards of money damages).  The United States Supreme Court

13  has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

14  complete the administrative review process in accordance with the applicable procedural rules.

15  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

16  PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

17  be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

18  grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

19  "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

20  requirement "by filing an untimely or otherwise procedurally defective administrative grievance

21  or appeal."  Woodford v. Ngo, supra, at 83-84, 126 S. Ct. at 2382.   Moreover, 42 U.S.C. §

22  1997e(a) provides that no action shall be brought with respect to prison conditions *until* such

23  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

24  Cir. 2002).

25  \\\\\

26  \\\\\

14

1          *Administrative Exhaustion Procedure*

2          In order for California prisoners to exhaust administrative remedies, they must

3    proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

4    CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

5    third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

6    985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

7    decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

8          *Discussion*

9          Defendants contend that between 2005 until the time of the filing of their motion,

10   plaintiff had submitted only four appeals that had been accepted for review at the director's level.

11   Motion to Dismiss (MTD), p. 6, citing Attachment 1, Declaration of T. Emigh, acting chief of the

12   Inmate Appeals Branch (IAB), ¶ 10.  Of those four appeals, defendants maintain that none of

13   them concern his present claims against, inter alia, defendant Abney.  MTD, p. 6, citing Emigh

14   Dec., at ¶ 14.  Defendants make the point that while plaintiff was on parole for some of the time

15   during which the alleged actions occurred, this does not excuse plaintiff from the requirement to

16   exhaust administrative remedies (MTD, p. 6), referencing Cal. Code Regs. tit.xv, § 3084.1(a),

17   which states in part that:

18              Any inmate or parolee under the department's jurisdiction may
                appeal any departmental decision, action, condition, or policy
19              which they can demonstrate as having an adverse effect upon their
                welfare.
20

21          Thus, defendants conclude, that plaintiff, having failed to exhaust the present

22   allegations against defendant Abney through the third level of review, has not satisfied the PLRA

23   administrative exhaustion requirement and those claims should be dismissed.  MTD, pp. 6-7.

24          Plaintiff, at the time of filing his opposition, states that he was awaiting jury trial

25   on charges that stemmed in part from "false and frivolous reports" by various defendants,

26   including Abney.  Opp., p. 1.  At the time of writing his opposition, plaintiff appears to have

15

1    been housed at Shasta County Jail; he claims to have exhausted all remedies available to him

2    with the CDCR.  Id.  Plaintiff states that he sent numerous letters to defendant CDCR parole

3    agent Abney's supervisor, Bre[n]da Wilding, with a 602 staff complaint "throughout the end of

4    2007 and 2008."  Opp., p. 2.  Plaintiff claims that Ms. Wilding failed to provide him with a first

5    level appeal response, and that since he was in the custody of the Shasta County Sheriff, he could

6    not access the CDCR grievance procedure, but was compelled to use the mail system.  Id.

7                 As Exhibit A, plaintiff attaches a copy of a letter to Supervisor Brenda Wilding at

8    an address in Redding, California, dated 1/04/08, and stamped "Redding Parole Office Jan 07

9    2008."  In the letter, plaintiff states that he encloses his complaint against Abney, asking her to

10   screen and process it.  As Exhibit B, plaintiff includes a copy of a 602 appeal, dated by plaintiff

11   as submitted on 1/03/08, also stamped  "Redding Parole Office Jan 07 2008," wherein plaintiff

12   complains of Abney having threatened him.  The document is marked as having been assigned to

13   the second level on 1/07/08, evidently signed by Regional Parole Administrator Rick Burrows

14   (since dismissed as a defendant), on 2/20/08, marked as partially granted, but denying a requested

15   OIA (Office of Internal Affairs) investigation.  The document is marked as having been returned

16   to plaintiff on 4/20/08, submitted by plaintiff to the third level on 4/23/08, with claims that he is

17   being continually harassed and threatened by Abney.  It is marked as received at the IAB on

18   4/29/08.[7]  Plaintiff includes a letter, as Exhibit C to his opposition, which is a copy of a letter

19   from N. Grannis of the IAB, informing plaintiff that the grievance at issue was being screened

20   out and returned pursuant to CAL. CODE REGS. tit.xv, § 3084.3 because it had to be completed

21   through the second level and only the original appeal was to be accepted at the director's level.

22   This screen-out is confirmed by defendants' Exhibit E to the motion to dismiss, which lists the

23   among the screened-out complaints a staff complaint received on 4/29/08 and rejected for the

24   _____

25        [7] Plaintiff indicates that he copied his grievance to the California Inspector General and
     the FBI, and includes a copy of a letter, dated June 4, 2009, from the Office of the Inspector
26   General indicating that no intervention on their part was warranted.  Exhibit B to Opp.

1  reasons set forth above.   MTD, Emigh Dec, ¶ 12, citing Exhibit E, containing a list of five

2  screened out appeals.

3          In reply, defendants make the cogent point that the grievance plaintiff submits as

4  having been initiated to exhaust his administrative remedies defendant Abney is dated January of

5  2008, while the instant complaint was filed on 11/26/07.  See Reply.  In other words, while

6  plaintiff complains that the grievance was improperly rejected because he did not file the original

7  grievance to the third level or that he sent numerous letters to both Burrows and Wilding to

8  which he did not receive a response regarding the 602, such arguments are irrelevant insofar as

9  plaintiff does not appear to have submitted the 602, that is, he did not begin the grievance

10  process until after he filed this complaint.

11          Further, the court's review of the grievances that have evidently been properly

12  exhausted through the director's level, MTD, Exhibits A through D, indicates that only one

13  makes any reference to defendant Abney.  Defendants' Exhibit C and plaintiff's Exhibit D, a

14  third level appeal response dated 10/02/06, references an incident that occurred at High Desert

15  State Prison on 3/06/05, in which plaintiff claims to have been a victim of excessive force by

16  various correctional officers, none of whom are defendants herein, whom plaintiff evidently

17  believed were called by defendant Abney for the purpose of  harassing plaintiff.  However,

18  plaintiff's allegations herein do not arise from the events at issue therein.

19          Because plaintiff did not exhaust his administrative remedies with regard to his

20  claims of threats and harassment by defendant Abney at issue herein prior to filing this lawsuit,

21  see McKinney v. Carey, supra, 311 F.3d 1198, defendant Abney's motion to dismiss should be

22  granted.

23          Accordingly, IT IS ORDERED that:

24          1.  Plaintiff's "motion for default judgment," as to defendant Sprint PCS, filed on

25  7/10/08 (docket # 34), lacks foundation and is denied;

26  \\\\\

17

1          2.  Plaintiff's motion to consolidate cases, filed on 9/02/08 (# 60), is disregarded

2   as inapposite and vacated from this court's calendar;

3          3.  The Clerk of the Court is to provide plaintiff with a copy of the motion to

4   dismiss and supporting memorandum, filed by defendant Sprint PCS, on 6/23/08 (docket # 29

5   and # 30).

6          IT IS HEREBY RECOMMENDED that the motion to dismiss, filed by defendant

7   Sprint, on 6/23/08 (docket # 29), be granted and defendant Sprint be dismissed with prejudice;

8   and defendants' motion to dismiss, filed on 7/23/08 (#37) be granted and defendant Abney be

9   dismissed without prejudice; and this matter proceed only as to the answering defendants.

10         These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within ten days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: 02/19/09

19                        /s/ Gregory G. Hollows

20                        UNITED STATES MAGISTRATE JUDGE

21

22  GGH:009
    jayn2522.mtd+

23

24

25

26

18