1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL AARON JAYNE,

11              Plaintiff,                    No. 2:07-cv-2522 LKK KJN P

12        vs.

13   SPRINT P.C.S., et al.,

14              Defendants,          FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17              Plaintiff, a state parolee presently housed in the Shasta County Jail, proceeding

18   without counsel, seeks relief pursuant to 42 U.S.C. § 1983.  Sole remaining defendants[1] City of

19   Anderson, Collier and Blunk (hereafter "defendants") filed a motion for summary judgment.

20   Plaintiff filed an opposition, and defendants filed a reply.

21              On June 17, 2010, plaintiff filed an objection to defendants' reply, and a

22   supplemental declaration.  Plaintiff is advised that the Local Rules do not provide for a surreply.

23   Local Rule 230(*l*) contemplates the filing of only a motion, opposition and reply.  The court did

24   not request the filing of a surreply; thus, plaintiff's objection will be disregarded.  However,

25

26              [1] All other defendants have been dismissed, either voluntarily by plaintiff or by court
order.  (Dkt. Nos. 20, 72, 78, 90.)

1

1  because plaintiff is proceeding without counsel, the court will consider his supplemental

2  declaration signed June 13, 2010.  (Dkt. No. 133 at 15-16.)

3  II.  Allegations[2]

4             This case is proceeding on the original complaint (Compl.), filed November 26,

5  2007.  (Dkt No. 1.)  Plaintiff alleges that after alleged victim Shandra Kessler went to the

6  Anderson Police Department to seek a restraining order against plaintiff,

> The Anderson Police then maliciously contacted Parole Agent
> Randy Abney knowingly bypassing [plaintiff's] assigned Parole
> Agent so Randy Abney could go after the plaintiff.  Anderson
> Police officers Blunk, Collier and Dispatch coerced [complaining
> witness] Miss Kessler into saying the plaintiff held her against her
> will for 6 hours.  Then these officers illegally sent [an] exigent
> circumstance request/demand to the plaintiff's cell phone provider
> saying he was wanted for kidnapping and to provide his cell
> records and G.P.S. location without a warrant or real cause.

13  (Id. at 7.)  Plaintiff alleges Sprint then provided the cell phone records to the Anderson City

14  Police Department.  (Id.)  Plaintiff contends these actions violated his Fourth Amendment rights.

15  III.  Motion for Summary Judgment

16             Legal Standard for Summary Judgment

17             Summary judgment is appropriate when it is demonstrated that the standard set

18  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought should be rendered if . . . there is no

19  genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of

20  law."  Fed. R. Civ. P. 56(c).

21             Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of the
> pleadings, depositions, answers to interrogatories, and admissions

_____

[2]  The court has previously recounted plaintiff's allegations contained in the complaint in
Findings and Recommendations issued February 20, 2009 at 2-5 (Dkt. No. 88), and will not
repeat them here.

1    on file, together with the affidavits, if any, which it believes
     demonstrate the absence of a genuine issue of material fact.

2

3    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotations omitted). "[W]here the

4    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

5    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

6    to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered,

7    after adequate time for discovery and upon motion, against a party who fails to make a showing

8    sufficient to establish the existence of an element essential to that party's case, and on which that

9    party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof

10   concerning an essential element of the nonmoving party's case necessarily renders all other facts

11   immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long

12   as whatever is before the district court demonstrates that the standard for entry of summary

13   judgment, as set forth in Rule 56(c), is satisfied." Id.

14         If the moving party meets its initial responsibility, the burden then shifts to the

15   opposing party to establish that a genuine issue as to any material fact actually does exist. See

16   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

17   establish the existence of this factual dispute, the opposing party may not rely upon the

18   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

19   form of affidavits, and/or admissible discovery material, in support of its contention that the

20   dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

21   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

22   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

23   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

24   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

25   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

26   1436 (9th Cir. 1987), impliedly overruled in part on other grounds by Hollinger v. Titan Capital

3

1  Corp., 914 F.2d 1564, 1577-78 (9th Cir. 1990).

2          In the endeavor to establish the existence of a factual dispute, the opposing party

3  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

4  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

5  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

6  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

7  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

8  committee's note on 1963 amendments).

9          In resolving a summary judgment motion, the court examines the pleadings,

10  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

12  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

13  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

14  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

15  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

16  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

17  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

18  show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

19  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

20  'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

21          In this case, on April 15, 2008, the court advised plaintiff of the requirements for

22  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. 14); see

23  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035

24  (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

25

26

IV.  <u>Undisputed Facts</u>[3]

      1.  Defendants did not obtain a warrant before seeking plaintiff's cell phone records from Sprint Nextel.

      2.  At the time the cell phone records were sought, plaintiff was on parole.

      3.  On March 17, 2007, Ms. Shanda Kessler contacted the Anderson Police Department and advised that plaintiff was calling her and making threats and she was fearful of him.  Ms. Kessler's call was initially entered in dispatch records as an "Advice" call and then later logged in as a "Kidnapping Report."[4]  (Dkt. 99 at 2.)

      4.  On March 18, 2007, Ms. Shanda Kessler met with Sgt. Steve Blunk of the Anderson Police Department and reported that beginning on March 9, 2007, and up to the date of that meeting with defendant Blunk, she had been stalked, threatened and falsely imprisoned by plaintiff.[5]  (Dkt. 99 at 2.)

      5.  On March 18, 2007, during her meeting with defendant Blunk, Kessler reported that on March 12, 2007, plaintiff physically restrained her, kept her in her residence against her will for 6 hours, ripped out her phone cord, and threatened her to not contact the

---

[3]  Plaintiff has filed a statement of disputed and undisputed facts ("UDFs"), most of which contains statements relating to defendants who have been voluntarily dismissed, in particular, defendant Abney, and most of which are not relevant to plaintiff's claims against the remaining defendants.  (Pl.'s UDFs Nos. 1 - 13, & 24-25 [Dkt. Nos. 123 & 132].)  Thus, the court will not address those statements.  Moreover, plaintiff includes alleged undisputed facts related to Fourth Amendment challenges to actions allegedly taken by defendants and Anderson Police against plaintiff's sister and his brother-in-law.  (Pl.'s UDFs Nos. 27 & 28.)  Plaintiff has no standing to bring Fourth Amendment challenges on behalf of third parties.  <u>See, e. g.</u>, <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 369 (9th Cir. 1998) ("[T]he general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights.")

[4]  Plaintiff disputes this fact, citing his own declaration.  However, plaintiff did not provide the paragraph or page number of his declaration on which he relies, and review of the declaration (Dkt. No. 121) reflects no mention of this fact, nor any other evidence refuting this fact.  Thus, the court finds it undisputed.

[5]  <u>See</u> footnote 4, supra.  Although plaintiff disagrees with what Kessler reported, he has provided no evidence that defendant Blunk was aware Kessler was allegedly lying.

1   police.[6]  (Dkt. 99 at 3.)

2          6.  On March 18 and 19, 2007, defendant Blunk confirmed Kessler's story by

3   doing the following:  (a) overhearing a cell phone conversation between Kessler and Kevin

4   Jayne, attorney brother of plaintiff, in which Kevin Jayne confirms his brother's wrongful

5   conduct and advises Kessler to stay away from his brother; (b) recording 13 cell phone messages

6   and 9 home phone messages left by plaintiff; (c) receiving a copy of 52 threatening text messages

7   sent to Kessler by plaintiff; (d) verifying the absence of text messages and phone messages

8   during the 6 hours Kessler was allegedly falsely imprisoned by plaintiff; (e) corroborating

9   Kessler's claims by interviewing witness Cory Jennings; (f) corroborating Kessler's claims by

10  interviewing victim Ralph Nasworthy; and (g) requiring Kessler to write out a 3 page

11  handwritten statement setting forth why she feared for her safety and why she needed a

12  restraining order.[7]  (Dkt. No. 99 at 3-4.)

13         7.  On March 18, 2007, defendant Blunk confirmed plaintiff was a parolee, with a

14  release date of June 5, 2004, and a prior conviction for resisting an officer with a firearm.[8]  (Dkt.

15  No. 99 at 4.)

16         8.  On March 19, 2007, defendant Blunk completed his initial investigative report

17  and forwarded copies to the Shasta County District Attorney and Parole Agents Ben Anonuevo

18  and Randy Abney.  (Dkt. 99 at 4; Dkt. 124 at 3.)

19         9.  On March 20, 2007, Parole Officer Randy Abney interviewed Kessler and

20  Kitrell Wyrick, at Kessler's residence.  Parole Officer Abney was familiar with plaintiff and had

21

22

---

23       [6]  See footnote 5, supra.

24       [7]  See footnote 4, supra.  Plaintiff also cites to a copy of the text messages (Ex. C) and a
     court transcript (Ex. D), but fails to explain how those documents refute this fact.

25
         [8]  See footnote 4, supra.  Plaintiff also cites to his Exhibit E, defendant Blunk's Incident
26   Report No. 07-4409, but fails to explain how this document allegedly refutes this fact.

1  received information about his current activities from defendant Blunk.[9]  (Dkt. No. 99 at 5.)

2         10.  On March 20, 2007, Parole Officer Abney was advised by Shanda Kessler

3  that plaintiff had been in possession of an assault style rifle and a semi-automatic handgun within

4  the last 2 weeks.  Kessler then confirmed this claim to Officer Abney by showing him a video

5  clip of what she claimed to be plaintiff firing an SKS or AK-47 assault rifle.[10]  (Dkt. No. 99 at 5.)

6         11.  On March 20, 2007, Parole Officer Abney was interviewing Kitrell Wyrick in

7  the presence of Kessler when plaintiff allegedly called Wyrick on his cell phone.  Wyrick was

8  staying with Kessler allegedly to protect Kessler from plaintiff.  Parole Officer Abney is familiar

9  with plaintiff's voice and he heard plaintiff tell Wyrick that he was going to put a "bullet in [his]

10  fucking head," after which he would then "kill [his] family."[11]  (Dkt. No. 99 at 5-6.)

11         12.  On March 20, 2007, Parole Officer Abney was at Kessler's residence for

12  approximately 30 minutes and personally heard plaintiff call Kessler's cell phone, Wyrick's cell

13  phone, and Kessler's residence phone, no less than 10 times threatening to shoot them.[12]  (Dkt.

14  No. 99 at 6.)

15         13.  On March 20, 2007, Parole Officer Abney had a good faith belief that

16  plaintiff was a clear and present danger to Kessler, other citizens and law enforcement officers

17  based on plaintiff's prior criminal record, his recent criminal activity involving Kessler, his

18  confirmed threats to inflict serious bodily harm on Kessler and others, his capacity to act to fulfill

19  his threats, and the fact that his whereabouts were unknown to all concerned.  Officer Abney then

20

21

22
    _____

23         [9]  See footnote 4, supra.  Plaintiff also cites an appended court transcript (Ex. D), but fails
    to provide a page citation or explain how this transcript allegedly refutes this fact.

24         [10]  See footnote 4, supra.

25         [11]  See footnote 9, supra.

26         [12]  See footnote 9, supra.

1   made efforts to locate plaintiff, which efforts were unsuccessful.[13]  (Dkt. No. 99 at 6-7.)

2          14.  In the late afternoon of March 20, 2007, Kessler notified Parole Officer

3   Abney that plaintiff allegedly called her and identified himself as Officer Brian Marker.  While

4   pretending to be Officer Marker, plaintiff asked Kessler a number of questions about what she

5   relayed to the Anderson Police Department and where she thought plaintiff might be found.[14]

6   (Dkt. No. 99 at 7.)

7          15.  On March 21, 2007, Parole Officer Abney received a call from Kessler in

8   which she advised that plaintiff had repeatedly called her house during the night and threatened

9   to "put a bullet in her fucking head," "also put a bullet in Kitrell's (Wyrick's) head," and kill

10  Wyrick's younger sister.[15]  (Dkt. No. 99 at 7.)

11         16.  On March 21, 2007, Parole Officer Abney spoke with Ms. Amanda Maason

12  who is friends with both Kessler and plaintiff.  Maason advised Officer Abney that plaintiff had

13  called her and said he knew he was going back to prison and he had nothing to lose by killing

14  Kitrell Wyrick.  Maason stated she told plaintiff to turn himself in and plaintiff responded that he

15  was not going back to prison and "this event was going to end in a shootout with the police."[16]

16  (Dkt. No. 99 at 7-8.)

17         17.  On March 21, 2007, defendant Collier of the Anderson Police Department

18  met with Ms. Shanda Kessler and Mr. Kitrell Wyrick at Ms. Kessler's residence to conduct a

19  follow-up interview.  Ms. Kessler then met with defendant Collier at the Anderson Police

20  Department and provided both a verbal statement and a 6 page written statement.  (Dkt. 99 at 8;

21

22      [13]  See footnote 4, supra.

23      [14]  See footnote 4, supra.  Plaintiff also cites the police report by defendant Collier, but
    fails to explain how this document allegedly refutes this fact.
24
25      [15]  See footnote 4, supra.  Plaintiff also cites Kessler's declaration, Exs. E-F, but fails to
    explain how these documents refute this fact.

26      [16]  See footnote 4, supra.

8

Dkt. 124 at 6.)

18.  On March 21, 2007, defendant Collier was advised by Kessler about many of the incidents, phone calls, and acts allegedly committed by plaintiff, and was advised that at 0300 hours that morning plaintiff had called her and said, "he was going to put a bullet in her head," "he was going to kill all of her family one by one," and he would "kill her before he goes down."[17]   (Dkt. No. 99 at 8-9.)

19.  On March 21, 2007, defendant Collier received a four page fax regarding interviews Parole Officer Abney had conducted in the matter and a 4 page fax from Mr. Ralph Nasworthy regarding the damage plaintiff allegedly did to his vehicle.[18]   (Dkt. No. 99 at 9.)

20.  On March 22, 2007, Parole Officer Abney completed his report and forwarded a copy to the Anderson Police Department to be attached to APD Case No. 07-4409. Officer Abney also referred the matter to the Shasta County District Attorney requesting charges including PC 422, PC 136.1(c)(1), PC 146(a), and PC 12021.  (Dkt. 99 at 9; Dkt. 124 at 7.)

21.  In the early morning hours of March 22, 2007, Public Safety Dispatcher Sarah Bennett ("Dispatcher Bennett"), not a named defendant herein, was on duty at the Anderson Police Department and working under the supervision of Anderson Police Sgt. Bryan Van Dyke (not a defendant).  As a result of reviewing departmental records and attending end of shift briefing sessions, Dispatcher Bennett and Sgt. Van Dyke were aware of the ongoing criminal activities of plaintiff, aware of plaintiff's prior record for committing violent offenses, aware that plaintiff was a parolee, and aware of the danger to various citizens and law enforcement personnel that existed as long as plaintiff's whereabouts were unknown.[19]   (Dkt. No. 99 at 10.)

22.  Because Dispatcher Bennett was aware plaintiff was continuing to use his cell

---

[17]  See footnote 4, supra.

[18]  See footnote 4, supra.

[19]  See footnote 4, supra.

1    phone to threaten Kessler and a number of other citizens, she discussed with her supervisor, Sgt.

2    Van Dyke, the possibility of attempting to locate plaintiff by determining the location of his cell

3    phone.[20]  (Dkt. No. 99 at 11.)

4         23.  Sgt. Van Dyke authorized Dispatcher Bennett to proceed with the necessary

5    steps to obtain plaintiff's cell phone location and cell phone records based on a good faith belief

6    there were exigent circumstances which warranted use of every means possible to locate plaintiff

7    and take him into custody.[21]  (Dkt. No. 99 at 11.)

8         24.  Dispatcher Bennett received and completed the Sprint Nextel exigent

9    circumstances request form for the purpose of obtaining cell phone information pertaining to

10   plaintiff.  It was Dispatcher Bennett's understanding the form had to be completed to the

11   satisfaction of Sprint Nextel Legal Compliance before Sprint Nextel would release any cell

12   phone information and she further understood cell phone information pertaining to plaintiff

13   would not be released unless there were exigent circumstances justifying the immediate release

14   of information.  (Dkt. 99 at 11; Dkt. 124 at 9.)

15        25.  At the time Dispatcher Bennett completed the exigent circumstances form on

16   behalf of the Anderson Police Department, she was informed and believed that exigent

17   circumstances existed in the form of plaintiff's recent commission of violent felonies, his recent

18   persistent threats to multiple citizens, including Kessler, that he would shoot them or kill them,

19   his documented possession of firearms which would give him a present capacity to complete his

20   threats to shoot or kill multiple citizens, his prior history of committing violent felonies, his

21   multiple promises that he would resort to deadly force in an effort to not return to prison, and the

22

23

24   _____

25        [20]  See footnote 4, supra.

26        [21]  See footnote 4, supra.

1  fact his whereabouts were unknown despite efforts by law enforcement to locate and arrest him.[22]

2  (Dkt. No. 99 at 12-14.)

3          26.  At the time Dispatcher Bennett completed the exigent circumstances form on

4  behalf of the Anderson Police Department, she was informed and believed that plaintiff had been

5  consistently using his cell phone to communicate with victims and potential victims, to issue

6  threats, and to procure information that would enable him to continue to evade law

7  enforcement's efforts to arrest him.[23]  (Dkt. No. 99 at 13.)

8          27.  At the time Dispatcher Bennett completed the exigent circumstances form on

9  behalf of the Anderson Police Department, she and Sgt. Van Dyke were informed and believed,

10  based on the original CAD entry, that plaintiff was "a wanted parolee and wanted for

11  kidnapping."  At the time Dispatcher Bennett completed the exigent circumstances form she had

12  not been advised that the original log entry stating a charge of "kidnapping" had been changed to

13  a charge of "false imprisonment."[24]  (Dkt. No. 99 at 13-14.)

14          28.  Dispatcher Bennett reviewed all of the information she placed on the Sprint

15  Nextel Exigent Circumstances form with her supervisor, Sgt. Bryan Van Dyke, prior to

16  submitting the form to Sprint Nextel.  Sgt. Van Dyke authorized Dispatcher Sarah Bennett to

17  sign the form on his behalf because he had previously reviewed and authorized the request for

18  information and then became unavailable to sign the form as a result of involvement in another

19  criminal investigation.  (Dkt. No. 99 at 14; Dkt. 124 at 12.)

20          29.  Dispatcher Bennett sent the Mandatory Information For Exigent

21  Circumstances Request form to Sprint Nextel Legal Compliance via facsimile transmission in the

22

23          [22]  See footnote 4, supra.  Plaintiff also cites the request sent to Sprint (Ex. B) and the
court transcript (Ex. D), but fails to explain how these documents allegedly refute this fact.

24

25          [23]  See footnote 4, supra.  Plaintiff also cites the request sent to Sprint and the police
report completed by defendant Collier, but fails to explain how these documents refute this fact.

26          [24]  See footnote 23, supra.

1    early morning hours of March 22, 2007.  (Dkt. No. 99 at 14-15; Dkt. No. 124 at 13.)

2           30.  A few hours after the exigent circumstances form was forwarded to Sprint

3    Nextel Legal Compliance it was reviewed by another member of the Anderson Police

4    Department, defendant Collier.

5           31.  Defendant Collier observed that the exigent circumstances form listed the

6    wanted offense for plaintiff as "kidnapping."  She believed the offense under investigation at the

7    Anderson Police Department was "false imprisonment" so she consulted with her superior,

8    Captain Kirvin.  (Dkt. No. 99 at 15; Dkt. No. 124 at 13.)

9           32.  Approximately mid-morning on March 22, 2007, defendant Collier advised

10   Sprint Nextel Legal Compliance that the Anderson Police Department wanted to withdraw its

11   request for plaintiff's phone subscriber information and location.  (Dkt. 99 at 15-16; Dkt. 124 at

12   13.)

13          33.  At all times during the Anderson Police Department's consideration, review

14   and request for plaintiff's cell phone location and his cell phone records, the individual officers

15   and employees involved in the request were under a good faith and reasonable belief that exigent

16   circumstances existed and warranted the request for plaintiff's cell phone information and no

17   officer or employee sought to mislead Sprint Nextel regarding the grounds for determining the

18   existence of exigent circumstances.[25]   (Dkt. No. 99 at 16.)

19          34.  No location information was received by the Anderson Police Department

20   during the period of time the Department had an open request to Sprint Nextel for plaintiff's cell

21   phone location and call records.[26]   (Dkt. No. 99 at 16-17.)

22          35.  Sprint Nextel advised the Anderson Police Department that during the period

23   of time the Anderson Police Department had an open request for plaintiff's cell phone location

24

25          [25]  See footnote 23, supra.

26          [26]  See footnote 4, supra.  Plaintiff also cites the form submitted to Sprint, but fails to
     explain how this document refutes this fact.

                                                   12

1   and call records no location information or "ping" was detected.  (Dkt. No. 99 at 17; Dkt. No.

2   124 at 15.)

3          36.  After the Anderson Police Department's March 22, 2007 withdrawal of its

4   request for cell phone location and call record information pertaining to plaintiff, it received

5   records pertaining to plaintiff from Sprint Nextel.[27]  (Dkt. No. 99 at 17.)

6          37.  The records that were forwarded to the Anderson Police Department by

7   Sprint Nextel were received by defendant Collier, were determined to pertain to plaintiff, and

8   were then disregarded and destroyed.[28]  (Dkt. No. 99 at 17.)

9          38.  During the course of its investigation of plaintiff, the Anderson Police

10  Department did not use or rely on any information or records received from Sprint Nextel.[29]

11  (Dkt. No. 99 at 17-18.)

12         39.  On March 23, 2007, defendant Collier completed her portion of APD Incident

13  Report No. 07-4409, and asked that the report be forwarded to the District Attorney for review.

14  (Dkt. No. 99 at 18; Dkt. No. 124 at 16.)

15         40.  On August 28, 2007, defendant Collier was advised that plaintiff was in

16  custody, had been arraigned and had been assigned legal counsel.  Because plaintiff was

17  represented, defendant Collier made no effort to contact him.  No one at the Anderson Police

18  Department had any personal contact with plaintiff at any time prior to his arrest.   (Dkt. No. 99

19

20        [27]  See footnote 14, supra.

21        [28]  In his declaration, plaintiff states, "I am informed and believe Anderson Police did not
     dispose of my cell phone records.  F.B.I. Agent Mike Skeen of Redding [was] in receipt of the
22   same records [in] March 2007.  [Plaintiff] actively viewed a written typed paper by [an] agent
     who said he obtained some phone numbers by the "case agent" who was F.B.I. Agent Skeen who
23   was trying to locate [plaintiff]."  (Dkt. No. 121 at 5-6.)  Plaintiff has not, however, provided a
     declaration from Agent Skeen or the "case agent" or any admissible evidence demonstrating that
24   defendants, in fact, provided the cell phone records from the warrantless search to the F.B.I.
     Plaintiff has not provided any competent evidence that the records viewed by plaintiff at the
25   F.B.I. office were the same records obtained by the warrantless search at issue here.  Thus, the
     court finds this fact undisputed.

26        [29]  See footnote 4, supra.

at 18; Dkt. No. 124 at 16.)

41. Between March 23, 2007, and August 23, 2007, the only effort made by the Anderson Police Department to locate plaintiff was a traffic stop on a vehicle in which plaintiff was believed to be the driver. The subsequent traffic stop revealed the occupant to be plaintiff's brother-in-law. The Anderson Police Department made no other effort to locate or arrest plaintiff.[30] (Dkt. No. 99 at 18-19.)

42. On September 27, 2007, defendant Collier received a copy of a letter that had been written by plaintiff and received by Ms. Shanda Kessler and that letter was booked into evidence and a copy forwarded to the District Attorney. (Dkt. No. 99 at 19; Dkt. No. 124 at 17.)

43. The Anderson Police Department has had no further involvement with the investigation or prosecution of plaintiff since receipt of the evidence presented by Ms. Kessler on September 27, 2007. (Dkt. No. 99 at 19; Dkt. No. 124 at 18.)

V. Disputed Facts

1. Defendants contend plaintiff was on searchable parole;[31] whereas plaintiff contends he did not waive his right to be free from warrantless searches of his cell phone records. (Pl.'s June 17, 2010 Decl.)

2. Defendants contend the charge of kidnapping was mistakenly placed on the request directed to Sprint to obtain plaintiff's cell phone records. Plaintiff contends defendants knowingly misrepresented the basis for the exigent circumstances necessary to obtain his cell phone records, but that even a mistaken entry on the request form violates his Fourth

---

[30] See footnote 4, supra.

[31] Defendants have provided a declaration by Parole Officer Randy Abney, who states that on or before March 20, 2007, he had personal knowledge that, inter alia, when plaintiff was released on parole he signed and agreed to all of the standard terms and conditions of parole as set forth on CDC Form 1515 (Rev 05/01); that as a result of his acceptance of parole he was subject to the provisions of Cal. Penal Code § 3067; and that as a result of that agreement, plaintiff agreed to be subject to search and seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and without cause. (Dkt. No. 103 at 2.)

1    Amendment rights.[32]

2              3.  Defendants contend exigent circumstances also justified the warrantless search.

3    Plaintiff argues the circumstances of alleged false imprisonment did not justify the warrantless

4    search.

5    VI.  Analysis

6              Plaintiff claims defendants violated his Fourth Amendment rights.  Defendants

7    argue that summary adjudication should be granted in this case because they did not violate

8    plaintiff's constitutional rights, or, in the alternative, they are entitled to qualified immunity.

9              Plaintiff alleges the Anderson Police maliciously contacted Parole Agent Randy

10   Abney knowingly bypassing his assigned Parole Agent so Abney could go after the plaintiff.

11   (Compl. at 7.)  Defendant Anderson Police Department answered the complaint on behalf of

12   Anderson Police "Dispatch."  Plaintiff alleges defendants Blunk, Collier and "Dispatch" coerced

13   Miss Kessler into saying plaintiff was held against her will for 6 hours.  Then "these officers"

14   illegally sent an exigent circumstance request to plaintiff's cell phone provider stating plaintiff

15   was wanted for kidnapping.  (Compl. at 7.)  Finally, plaintiff contends defendants Collier and

16   Blunk, and Dispatcher Bennett (not a defendant) provided the Redding Office of the FBI,

17   specifically Special Agent Mike Skenn, with plaintiff's cell phone records.  (Dkt. No. 133 at 16.)

18   The court will address these claims seriatim.[33]

19

20         [32]  Plaintiff also argues that 18 U.S.C. § 2701 (Electronic Communication Protection Act)
     does not give immunity for such mistakes.  (Opp'n at 14.)

21

22         [33]  It appears there is an ongoing criminal prosecution in Shasta County concerning some
     of the incidents addressed in the pleadings herein.  (Dkt. No 125 at 2.)  Thus, this court has
23   considered whether plaintiff's claims in this matter should be stayed under the abstention
     doctrine set forth in Younger v. Harris, 401 U.S. 37, 45-46 (1971) (federal courts cannot interfere
24   with pending state criminal proceedings, absent extraordinary circumstances which create a
     threat of irreparable injury.)  The undersigned has determined, however, that the defendants are
25   entitled to summary judgment at this time.  The issues herein do not implicate those involved in
     the ultimate outcome of the criminal action because the issues herein involve what the named
26   defendants knew at the time the alleged incidents occurred.  For the reasons set forth below, the
     plaintiff has not opposed defendants' undisputed facts with admissible evidence, and the

1          A.  Contacting Abney

2          Plaintiff claims the Anderson Police maliciously contacted Parole Agent Randy

3  Abney knowingly bypassing plaintiff's assigned parole officer.  However, it is undisputed that on

4  March 19, 2007, defendant Blunk completed his initial investigative report and forwarded copies

5  to the Shasta County District Attorney and Parole Agents Ben Anonuevo and Randy Abney.

6  (Dkt. 99 at 4; Dkt. 124 at 3.)  Plaintiff has provided no competent evidence to support his view

7  that the contact was malicious or for the purpose of bypassing his assigned parole officer.

8  Although plaintiff claims that he has had an "alarming history, in which Randy Abney has

9  continued to harass [him], charge [him], follow [him] over the last 5 years," (Dkt. No. 121 at 2),

10  plaintiff has provided no evidence to demonstrate that defendant Blunk was aware of that alleged

11  history.  Moreover, plaintiff has provided no evidence to demonstrate that defendant Blunk was

12  required to contact plaintiff's assigned parole officer rather than Parole Officer Abney.

13  Moreover, the undisputed fact demonstrates defendant Blunk notified both Anonuevo and

14  Abney.

15          Plaintiff has failed to demonstrate a disputed issue of fact remains with regard to

16  this allegation; thus, defendants are entitled to summary judgment on this claim.

17          B.  Alleged Coercion

18          Plaintiff claims defendants coerced Kessler into saying plaintiff held her against

19  her will for 6 hours.  (Compl. at 7.)

20          Plaintiff has provided a declaration in which he declares the complaining victim,

21  Shanda Kessler, was lying about the allegations against him, that Parole Officer Abney was out

22  to get plaintiff, that Kessler was affiliated with the Vagos Motorcycle Club and was the girlfriend

23  of Vagos President Kitrell Wyrick.  (Dkt. 121 at 3-4.)  Plaintiff also declares Abney and Kessler

24  conspired to frame plaintiff on fabricated charges.  (Id. at 5.)

25  _____

26  outcome of the criminal trial would not alter that result.

1   Most significantly, plaintiff has provided no evidence to support the view that

2   defendant Collier, defendant Blunk, or "Dispatch" were aware of these allegations at the time

3   they took Kessler's report.  In his opposition to the motion, plaintiff speculates that these officers

4   should have known Kessler and Wyrick were not credible based on Kessler's alleged criminal

5   record and Wyrick's alleged connections to the Vagos, because Anderson is a small town.

6   Plaintiff also speculates that Dispatcher Sarah Bennett should have known that "kidnapping" was

7   not the proper charge because the dispatch office is small and if there had been  a kidnapping, she

8   would have heard about it.  Plaintiff's mere speculation, however, is insufficient to establish that

9   a genuine issue of material fact exists.

10   Plaintiff's declaration is insufficient to raise an inference that defendants knew

11   Kessler was allegedly lying.[34]  A prior criminal record or association with a motorcycle gang

12   does not preclude the possibility that someone was threatening Kessler at that time.  Moreover,

13   plaintiff admits he is awaiting trial on the charges pressed by Kessler (dkt. no 125 at 2); thus, her

14   credibility has not yet been determined.

15   It is undisputed that no one at the Anderson Police Department had any personal

16   contact with plaintiff at any time prior to his arrest.  (Dkt. No. 99 at 18; Dkt. No. 124 at 16.)

17   Because plaintiff was not present at the time of Kessler's report, he cannot provide a personal

18   declaration as to what happened at that time.  Plaintiff has provided no evidence to support his

19   claim of coercion.  He has not provided a declaration by Kessler stating she was coerced.  He has

20   provided no declaration from any witness to the alleged coercion.  His belief that her testimony

21   was coerced appears to be based solely on his own speculation regarding what happened.

22   Moreover, he appears to contradict himself by his declaration that Abney and Kessler conspired

23

24   [34]  Plaintiff may not create disputes of fact by writing a self-serving declaration.  For
    example, self-serving declarations that are physically impossible or that are both uncorroborated
25   and contradicted by other credible evidence are insufficient.  Villiarimo v. Aloha Island Air, Inc.,
    281 F.3d 1054, 1061 (9th Cir. 2002) (self-serving declarations uncorroborated by other testimony
26   do not create genuine issue of material fact).

1   to fabricate these charges against him, thus refuting any inference of coercion.  (May 24, 2010

2   Decl. at 5-6.)  Plaintiff has failed to demonstrate a material dispute of fact exists with regard to

3   plaintiff's claim that defendants coerced Kessler.  Thus, defendants are entitled to summary

4   judgment on this claim.

5                       C.  The Warrantless Search

6                       The court turns now to the warrantless search.  It is undisputed that defendants did

7   not obtain a warrant prior to seeking plaintiff's cell phone location and cell phone records.

8   Defendants contend that no warrant was required because plaintiff consented to the search by

9   executing a CDC form 1515 prior to his parole in 2004.  Defendants argue that pursuant to

10  California Penal Code § 3067,[35] plaintiff could not be released from prison without plaintiff's

11  signature on this form.  In pertinent part, the form states "You and your residence and any

12  property under your control may be searched without a warrant by an agent of the Department of

13  Corrections or any law enforcement officer."  (Dkt. No. 103 at 9.)  Defendants also contend

14  exigent circumstances justified the warrantless search.  In the alternative, defendants seek

15  qualified immunity for their actions.

16                      Defendants could not provide the CDC form 1515 signed by plaintiff, and believe

17  it was purged from plaintiff's file.  However, defendants have provided a declaration by Parole

18  Officer Randy Abney, who states that on or before March 20, 2007, he had personal knowledge

19  that, inter alia, when plaintiff was released on parole he signed and agreed to all of the standard

20

21          [35]  California Penal Code § 3067 provides, in pertinent part:

22          (a) Any inmate who is eligible for release on parole pursuant to this chapter shall agree in
        writing to be subject to search or seizure by a parole officer or other peace officer at any time of
        the day or night, with or without a search warrant and with or without cause.

23          (b) Any inmate who does not comply with the provision of subdivision (a) shall lose
        worktime credit earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 on

24      a day-for-day basis and shall not be released until he or she either complies with the provision of
        subdivision (a) or has no remaining worktime credit, whichever occurs earlier.

25          (c) This section shall only apply to an inmate who is eligible for release on parole for an
        offense committed on or after January 1, 1997.

26  Cal. Penal Code § 3067(a) - (c) (West 2000).

                                                    18

1  terms and conditions of parole as set forth on CDC Form 1515 (Rev 05/01); that as a result of

2  plaintiff's acceptance of parole, he was subject to the provisions of California Penal Code §

3  3067; and that as a result of that agreement, plaintiff agreed to be subject to search and seizure by

4  a parole officer or other peace officer at any time of the day or night, with or without a search

5  warrant and without cause.  (Dkt. No. 103 at 2.)

6          Plaintiff counters that he did not agree to waive his right to be free from

7  warrantless searches of his phone records, call logs or his Sprint Nextel cell phone.  (June 17,

8  2010 Decl. at 2.)  Plaintiff argues that even if Dispatcher Bennett's use of the term "kidnapping"

9  was a mistake, it violates his Fourth Amendment rights, and that the "ECPA and SCA under 18

10  U.S.C. § 2701"[36] does not give immunity for such mistakes by police agencies.  (Dkt. No. 125 at

11  14.)

12          Legal Standard

13          To prove a claim under § 1983, a plaintiff must:  (1) "establish a violation of his

14  constitutional rights" and (2) "show that the defendant's actions were taken under color of state

15  law."  Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001) (citation omitted).  "Acting under

16  color of state law is 'a jurisdictional requisite for a § 1983 action.'"  Id. (quoting West v. Atkins,

17  487 U.S. 42, 46 (1988)).

18          The Fourth Amendment provides:  "The right of the people to be secure in their

19  persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

20  violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.

21

22          [36] Title 18 U.S.C. § 2701 governs the unlawful access to stored communications.  Id.  "A
   governmental entity may require a provider of electronic communication service . . . to disclose a
23  record or other information pertaining to a subscriber . . . only when the governmental entity -
   (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal
24  Procedure by a court with jurisdiction over the offense under investigation or equivalent State
   warrant. . . ."  18 U.S.C. § 2703(c)(1).  However, in his complaint, plaintiff did not raise a claim
25  that defendants violated his rights under the Electronic Communication Privacy Act ("ECPA"),
   18 U.S.C. §§ 2510(4), 2511(1).  Rather, his complaint only alleges Fourth Amendment
26  violations.  Moreover, the two parties responsible for the Sprint Nextel request, Dispatcher
   Bennett and Sgt. Van Dyke, were not named as defendants herein.

1    The touchstone of the Fourth Amendment is reasonableness, which is determined

2 by the degree to which it intrudes upon a person's privacy balanced against the degree to which it

3 promotes legitimate governmental interests.  Wyoming v. Houghton, 526 U.S. 295, 300 (1999).

4 The Supreme Court has rejected the idea that parolees have no Fourth Amendment rights.

5 Samson v. California, 547 U.S. 843, 850 n.2 (2006).[37]  An examination of the "totality of the

6 circumstances" is needed to determine whether a search is reasonable within the meaning of the

7 Fourth Amendment.  Id. at 848 (quoting United States v. Knights, 534 U.S. 112, 118 (2001)[38]).

8 Searches of parolees must be based on knowledge that the target is on parole.  See Moreno v.

9 Baca, 431 F.3d 633, 641 (9th Cir. 2005).

10    Moreover, if a parolee has signed a parole condition allowing searches without a

11 warrant by a law enforcement officers, an officer may conduct a warrantless, suspicionless search

12 of a parolee's person or residence.  Samson, 547 U.S. at 849-56; United States v. Lopez, 474 F.3d

13 1208, 1213-14 (9th Cir. 2007); Fitzgerald v. City of Los Angeles, 485 F.Supp.2d 1137, 1143

14 (C.D. Cal. 2007).  However, for such a suspicionless search to be valid, the officer conducting

15 the search must have prior knowledge of the person's parole status.  Samson, 547 U.S. at 856

16 n.5.; Fitzgerald, 485 F.Supp.2d at 1143; In re Jaime P., 40 Cal.4th 128, 137, 51 Cal.Rptr.3d 430

17 (2006).

18    In addition, when faced with special law enforcement needs, the Supreme Court

19 has found that certain general, or individual, circumstances may render a warrantless search or

20 seizure reasonable.  Menotti v. City of Seattle, 409 F.3d 1113, 1152 (9th Cir. 2005), citing

21

22        [37]  After analyzing the totality of the circumstances, the Samson court held that the

23 suspicionless search of California parolee did not violate the Fourth Amendment.  Id.

24        [38]  In Knights, California law required Knights, as a probationer, to "[s]ubmit his . . .

25 person, property, place of residence, vehicle, personal effects, to search at anytime, with or
without a search warrant, warrant of arrest or reasonable cause by any probation officer or law
enforcement officer.'"  Id., 534 U.S. at 114 (brackets in original).

26

1    Illinois v. McArthur, 531 U.S. 326, 330 (2001).[39]  For example, a warrantless search may be

2    justified by exigent circumstances.  Exigent circumstances are "those circumstances that would

3    cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the

4    officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some

5    other consequence improperly frustrating legitimate law enforcement efforts."  United States v.

6    Brooks, 367 F.3d 1128, 1135 (9th Cir. 2004) (internal quotation marks and citations omitted).

7    Exigent circumstances may exist even in the absence of hot pursuit, and "the gravity of the crime

8    and likelihood that the suspect is armed may be considered when weighing the risk of danger."

9    Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1171-72 (9th Cir. 2003).

10           A warrantless search of a seized cell phone, which results in the
             retrieval of a record of incoming calls to that phone, may be
11           justified by exigent circumstances.  See United States v. Parada,
             289 F.Supp.2d 1291, 1303-04 (D.Kan.2003) ("Because a cell
12           phone has a limited memory to store numbers, the agent recorded
             the numbers in the event that subsequent incoming calls effected
13           the deletion or overwriting of the earlier stored numbers.  This can
             occur whether the phone is turned on or off, so it is irrelevant
14           whether the defendant or the officers turned on the phone . . . under
             these circumstances, the agent had the authority to immediately
15           search or retrieve, as a matter of exigency, the cell phone's memory
             of stored numbers of incoming phone calls, in order to prevent the
16           destruction of this evidence")[40]; but see United States v.

17           _____

18      [39]    Exceptions to the warrant requirement, for example, include
             administrative searches, Donovan v. Dewey, 452 U.S. 594, 598 . . .
19           (1981), searches incident to arrest, see United States v. Edwards,
             415 U.S. 800, 802-03 . . .  (1974), automobile checkpoint searches,
20           see Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 455 . . .
             (1990), reasonable detention of suspects during the execution of a
21           search warrant, see Michigan v. Summers, 452 U.S. 692, 702-05 . .
             . (1981), limited searches for weapons based on reasonable
22           suspicion, see Terry v. Ohio, 392 U.S. 1, 27 . . . (1968), and
             exigent circumstances, see United States v. Place, 462 U.S. 696,
23           701 . . . (1983).

24    Menotti, 409 F.3d 1152 n.72.

25
        [40]  The court in Parada further found that the retrieval of numbers from the memory of the
26    cell phone did not violate the ECPA, 18 U.S.C. §§ 2510(4), 2511(1), as the stored numbers did

1         <u>Morales-Ortiz</u>, 376 F.Supp 2d 1131, 1141-1142 (exigent
circumstances did not justify retrieval of a cell phone's memory
2         where authorities, unlike those in <u>Parada</u>, appeared to have
retrieved phone numbers and names, suggesting that authorities did
3         more than merely record the incoming call list, and actually
accessed the phone book's memory; contents of cell phone, despite
4         the unlawful search, still held admissible based on the doctrine of
inevitable discovery).

5

6 <u>United States v. Santillan</u>, 571 F.Supp.2d 1093, 1103 (D. Ariz. 2008) (motion to suppress

7 evidence from cell phone denied).  No party has provided, nor has this court found, a case

8 addressing the warrantless search of cell phone records to locate the cell phone or access the cell

9 phone records of a parolee accused of ongoing criminal activity.

10         However, the Supreme Court has made clear that warrantless searches of parolees

11 may be sustained because parolees are subject to "intense supervision" and pose a problem of

12 "re-integration" into society.  <u>Samson</u>, 547 U.S. at 854.  The person and residence of a parolee

13 may be searched even if the police suspect no wrongdoing.  <u>Samson</u>, 547 U.S. at 856; <u>Lopez</u>, 474

14 F.3d at 1213-1214.  But "before conducting a warrantless search . . . law enforcement officers

15 must have probable cause to believe that the parolee is a resident of the house to be searched."

16 <u>Motley v. Parks</u>, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc).

17         <u>Analysis</u>

18         Analyzing plaintiff's claim by the undisputed facts, drawing all reasonable

19 inferences in favor of plaintiff, and examining the totality of the circumstances, the court finds no

20 reasonable jury could find that defendant violated plaintiff's Fourth Amendment rights.  The

21 court finds that the legitimate governmental interests in locating plaintiff under exigent

22 circumstances outweighed the intrusion into plaintiff's privacy.

23         People have an expectation of privacy in their whereabouts.  Because the GPS in a

24 cell phone or the "ping" to a cell site tower can reveal one's location, the intrusion on plaintiff's

25 ───────────────────

26 not constitute a "communication" subject to the requirements of the Act.

privacy was a serious one.  Here, plaintiff's cell phone location and records were sought and

obtained without a warrant.  Usually pen registers and trap and traces require a warrant supported

by probable cause.  Indeed, here, defendants failed to address if any of the officers even discussed

whether or not a warrant should be obtained.

However, it is undisputed that plaintiff was on parole at the time.  Whether or not

plaintiff signed Form 1515, as a parolee, plaintiff has significantly diminished privacy interests.

Indeed, most parolees must keep their parole officers informed of their whereabouts, particularly

their home and work addresses.

In addition, plaintiff has not demonstrated that defendants used the information

either to locate plaintiff or review his records.  The Anderson Police Department received no

location information during the period of time the request to Sprint was pending.  (UDF 34.)[41]  It

is undisputed that Sprint Nextel advised the Anderson Police Department that during the period

of time the Anderson Police Department had an open request for plaintiff's cell phone location

and call records no location information or "ping" was detected.  (UDF 35.)  The only

documented effort to arrest plaintiff by an officer of the Anderson Police Department was the

traffic stop on a vehicle the officer believed plaintiff was driving (his brother-in-law was the

driver).  (UDF 41.)  It is undisputed that no one at the Anderson Police Department, including

defendants, had any personal contact with plaintiff at any time prior to his arrest.  (UDF 40.)

Although plaintiff claims the F.B.I. received the cell phone records from a "case

agent" (dkt. No. 121 at 6), he has not provided any competent evidence that defendants provided

those records, or that the records he viewed at the F.B.I. office were the same records obtained

via the warrantless search at issue here.  On the other hand, defendant Collier has provided a

declaration stating the records were disregarded and destroyed.  (UDF at 37.)  Moreover, it is

undisputed that defendant Collier was advised on August 28, 2007 that plaintiff was in custody.

---

[41]  Citations to "UDF" from this point forward reference the court's undisputed facts set
forth above.

1   (UDF 40.)  It appears defendants did not arrest plaintiff.

2           The court turns now to analyzing the degree to which the warrantless search

3   promoted legitimate governmental interests.  Kessler contacted the Anderson Police Department

4   with multiple complaints against plaintiff.  In her March 17, 2007 contact, she claimed plaintiff

5   was calling her, making threats against her, and that she was afraid of him.  (UDF 3.)  On March

6   18, 2007, Kessler met with defendant Blunk and stated that from March 9, 2007 through March

7   18, 2007, plaintiff stalked, threatened, and falsely imprisoned Kessler.  (UDF 4.)  During that

8   meeting, Kessler claimed that on March 18, 2007, plaintiff physically restrained her, kept her in

9   her residence against her will for 6 hours, ripped out her phone cord, and threatened her not to

10  contact the police.  (UDF 5.)  Defendant Blunk then took steps to corroborate her allegations, and

11  confirmed plaintiff was on parole.  (UDF 6 & 7.)

12          On March 21, 2007, defendant Collier met with both Kessler and Wyrick and

13  conducted a follow-up interview.  (UDF 17.)  Kessler related many of the incidents, phone calls,

14  and acts allegedly committed by plaintiff, and was advised that at 0300 hours that morning,

15  plaintiff had called her and said, "he was going to put a bullet in her head," "he was going to kill

16  all of her family one by one," and he would "kill her before he goes down."  (UDF 18.)  On

17  March 21, 2007, defendant Collier received Parole Officer Abney's four page fax regarding his

18  interviews, and a four page fax from Mr. Ralph Nasworthy regarding damage he claimed plaintiff

19  did to his vehicle.  (UDF 19.)

20          The dire nature of Kessler's allegations, corroborated by defendant Blunk's

21  actions (UDF 6), demonstrate that plaintiff posed an immediate threat to Kessler and warranted

22  law enforcement efforts to locate and arrest plaintiff.  Such efforts promoted legitimate

23  governmental interests, not only because he posed a threat to Kessler, but because of his criminal

24  history, he also posed a threat to law enforcement and the public.  Moreover, the actions of

25  Dispatcher Bennett and Sgt. Van Dyke were reasonable under the circumstances.  Kessler's

26  initial contact with the police on March 17, 2007, was logged into the CAD as a "Kidnapping

Report." (UDF 3.)  When Dispatcher Bennett completed the exigent circumstances form, she and Sgt. Van Dyke were informed and believed, based on the original CAD entry, that plaintiff was "a wanted parolee and wanted for kidnapping."  At the time Dispatcher Bennett completed the exigent circumstances form she had not been advised that the original log entry stating a charge of "kidnapping" had been changed to a charge of "false imprisonment." (UDF 27.) Dispatcher Bennett, Sgt. Van Dyke, defendant Blunk and defendant Collier have all provided declarations affirming they had a good faith belief it was imperative to immediately arrest plaintiff and take him into custody as soon as possible for the safety of Kessler, for the safety of other citizens he had threatened, and to prevent him from committing further crimes.

A few hours later, when defendant Collier noticed that the form incorrectly stated kidnapping, she consulted with Captain Kirvin, her superior (UDF 30-31), and by mid-morning defendant Collier contacted Sprint Nextel Legal Compliance, advising the Anderson Police Department wanted to withdraw its request for plaintiff's cell phone location and records.  (UDF 32.)  Defendant Collier's decision to withdraw the request rather than simply change the term concerns this court.  It raises an inference that she may have realized, or her supervisor may have informed her, that a warrantless search of cell phone records was inappropriate.  She declares that "to her knowledge" the Anderson Police Department did not "utilize or rely on any information or records received from Sprint Nextel during the course of its investigation of plaintiff." (Dkt. No. 102 at 4.)  These facts take away from defendants' claim that exigent circumstances existed. In addition, the fact that no further action was taken to locate plaintiff by defendant Blunk between March 23, 2007 and August 23, 2007, also detracts from a finding of exigent circumstances.  If plaintiff were such a threat to Kessler and the community, a reasonable person would expect Anderson Police to continue their efforts to locate him.

The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.  Samson, 547 U.S. at 846, 856.  Where "an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal

1    activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the

2    probationer's significantly diminished privacy interests is reasonable." Knights, 534 U.S. at 121

3    (based upon suspicion that Knights had been involved in arson and vandalism and pursuant to the

4    search condition of his probation, a warrantless search of his apartment did not violate the Fourth

5    Amendment).

6         Here, plaintiff, a parolee, had significantly diminished privacy interests.  The

7    undisputed facts demonstrate there was a likelihood of further criminal activity.  Given the then-

8    perceived dire threat plaintiff posed to Kessler, based on her allegations and the corroboration by

9    defendants Blunk and Collier, and plaintiff's criminal history, the efforts to establish plaintiff's

10   whereabouts via the warrantless search of plaintiff's cell phone location and records promoted

11   legitimate governmental interests, based on exigent circumstances.  The facts that officers later

12   withdrew the request and took no further investigatory action should not eviscerate the existence

13   of exigent circumstances at the time the warrantless search was initiated.

14        Balancing the intrusion of plaintiff's Fourth Amendment interest against the

15   countervailing interest of the government, the court finds that the legitimate governmental

16   interests far outweighed the intrusion into plaintiff's privacy, particularly since he has a

17   diminished privacy expectation as a parolee, no information as to his location was obtained,[42] and

18   defendants did not use the cell phone records once received.  The actions of named defendants,

19   and Dispatcher Bennett and Sgt. Van Dyke (not named defendants), were reasonable under the

20

21

22

_____

    [42]  Accordingly, the undersigned need not address whether a Fourth Amendment violation
23   may have occurred if defendants had obtained and acted upon information as to plaintiff's
    whereabouts from Sprint.  See United States v. Forest, 355 F.3d 942, 951 (6th Cir. 2004),
24   vacated on other grounds, Garner v. United States, 543 U.S. 1100 (2005).  The Third Circuit
    Court of Appeal is considering whether the Department of Justice may seize "historical" cell
25   phone location records.  In the Matter of an Application of the United States for an Order . . . (2)
    Authorizing Release of Subscriber Information and/or Cell Site Information, Case No. 08-4227
26   (3rd Cir. 2010) (oral argument February 12, 2010).

1   totality of circumstances present here.[43]

2         Plaintiff has failed to demonstrate there exists a material dispute of fact with

3   regard to plaintiff's claim that the warrantless search violated his Fourth Amendment rights.

4   Defendants are entitled to summary judgment on this claim.

5         D. <u>Defendant Anderson Police Department</u>

6         Defendant Anderson Police Department answered the complaint on behalf of

7   Anderson Police "Dispatch."  Plaintiff alleges defendants Blunk, Collier and "Dispatch" coerced

8   Miss Kessler into saying plaintiff held her against her will for 6 hours.  Then "these officers"

9   illegally sent an exigent circumstance request to plaintiff's cell phone provider stating plaintiff

10  was wanted for kidnapping.  (Compl. at 7.)

11        The Civil Rights Act under which this action was filed provides as follows:

12        Every person who, under color of [state law] . . . subjects, or causes
    to be subjected, any citizen of the United States . . . to the
13        deprivation of any rights, privileges, or immunities secured by the
    Constitution . . . shall be liable to the party injured in an action at
14        law, suit in equity, or other proper proceeding for redress.

15  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

16  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

17  <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362

18  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

19  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

20  omits to perform an act which he is legally required to do that causes the deprivation of which

21  complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

22        Supervisory personnel may not be held liable under § 1983 for the actions of their

23

24      [43]  In light of the finding the search was reasonable under the Fourth Amendment, this
    court need not address whether or not plaintiff signed CDC Form 1515 prior to his parole or
    whether or not the application of Cal. Penal Code § 3067(a) dictates a complete waiver of his
25  Fourth Amendment rights.  <u>See Knights</u>, 534 U.S. at 118.  The California Supreme Court has not
    yet addressed the breadth of the waiver contained in Cal. Penal Code § 3067 (West 2000).
26  <u>Samson</u>, 547 U.S. at 851 n.3.

1   employees under a theory of respondeat superior.  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir.

2   1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  A supervisory official may be

3   held liable if he or she was personally involved in a deprivation of the plaintiff's rights or if there

4   is a sufficient causal connection between the supervisor's wrongful conduct and the alleged

5   violation of rights.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991);

6   Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989).  A causal connection may be established

7   by showing that a supervisor set in motion a series of acts by others which the supervisor knew or

8   reasonably should have known would cause others to inflict a constitutional violation.  Ybarra v.

9   Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984); Johnson, 588

10  F.2d at 743-44.

11          In the instant complaint, plaintiff fails to allege the Anderson Police Department

12  set in motion any acts which the Department knew or should have known would cause its

13  employees to inflict a constitutional violation.  Plaintiff has adduced no evidence to show that the

14  actions of named defendants were the result of any unlawful practices, policies or procedures of

15  the Anderson Police Department.  Nor did plaintiff's complaint raise any such allegation.

16  Although a city police department can be held liable for its official policies or customs, it will not

17  be held liable for an employee's actions outside of the scope of these policies or customs.

18  Plaintiff has not shown that the Anderson Police Department has a policy that warrantless

19  searches of cell phone records are authorized.  Plaintiff has failed to demonstrate that a genuine

20  issue of material fact remains as to this defendant.  Defendants' motion for summary judgment as

21  to defendant Anderson Police Department should be granted.

22  VII.  Qualified Immunity

23          Because the court finds no Fourth Amendment violation under the totality of

24  circumstances present here, it need not reach the issue of qualified immunity.

25  VIII.  Conclusion

26          For all of the above reasons, IT IS HEREBY RECOMMENDED that the motion

28

1  for summary judgment, Dkt. No. 97, be granted as to all defendants and this case be closed.

2       These findings and recommendations are submitted to the United States District

3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

4  one days after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Such a document should be captioned

6  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

7  objections shall be filed and served within fourteen days after service of the objections.  The

8  parties are advised that failure to file objections within the specified time may waive the right to

9  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  DATED:  July 14, 2010

11

12

13

KENDALL J. NEWMAN

14  UNITED STATES MAGISTRATE JUDGE

15  jayn2522.msj

16

17

18

19

20

21

22

23

24

25

26